[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-14638
Non-Argument Calendar

_____

D. C. Docket No. 04-60054-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BLADIMIRO PARRA-MERCADO,
a.k.a. Carlos Posadas,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 9, 2006)**

Before ANDERSON, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Bladimiro Parra-Mercado ("Parra") appeals his convictions and concurrent

360-month sentences for: (1) conspiracy to import cocaine, in violation of 21

U.S.C. § 963; (2) importation of cocaine, in violation of 21 U.S.C. § 952(a);

(3) conspiracy to possess with intent to deliver cocaine, in violation of 21 U.S.C. § 846; and (4) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Parra raises five issues on appeal, including that his sentence unconstitutionally was enhanced, pursuant to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed 621 (2005), which was decided after Parra was sentenced.

## I. Limitation of Cross-Examination

First, Parra contends that the district court violated his Sixth Amendment right to confront witnesses by preventing him from cross-examining Angel Chain ("Angel") and Patricia Chain ("Patricia"), key government witnesses whose testimony was essential to the government's case, about their witness protection agreement with the government. He argues that their testimony on cross-examination: (1) would have established that their family members actually were not in fear for their safety, in conflict with their testimony; and (2) was essential to his defense, which centered on impeaching their credibility. Parra posits that, because other evidence in the record showed the untrustworthiness of Angel and Patricia, he should have been allowed to inquire further about the agreement with the government in order to bolster his argument that they were motivated by hidden agendas.

2

We review the district court's restrictions on cross-examination for an abuse of discretion. United States v. Baptista-Rodriguez, 17 F.3d 1354, 1370-71 (11th Cir. 1994). The Confrontation Clause of the U.S. Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to cross-examine witnesses is included in the Confrontation Clause. Pointer v. Texas, 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The Confrontation Clause, however, "guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (citation omitted). "[W]here the witness sought to be cross-examined is the government's 'star' witness, providing an essential link in the prosecution's case, the importance of full cross-examination to disclose possible bias is necessarily increased." United States v. Lankford, 955 F.2d 1545, 1548 (11th Cir. 1992) (internal quotations and citations omitted). "Unless the defendant has been permitted sufficient cross-examination to allow a jury to adequately assess the witness' credibility, the district court's limitation of cross-examination will be in error." Id. Once there is sufficient cross-examination to satisfy the Confrontation Clause, the district court may limit further cross-

examination within its discretion.  United States v. Diaz, 26 F.3d 1533, 1539 (11th Cir. 1994).

In Lankford, we noted that:

[T]he Sixth Amendment does not require unlimited inquiry into the potential bias of a witness . . . [and a]s long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied. Where . . . a witness' motive for testifying may be exposed through alternative lines of questioning, the district court's refusal to allow prejudicial inquiry into motive that is grounded in nothing more than speculation is not in error.

Lankford, 955 F.2d at 1549 n.10.  Moreover, we have found that limiting the cross-examination of witnesses, regarding their addresses, was not erroneous, where there was reason to believe that the disclosure of the information would put the witnesses in physical danger, because they were in a government witness protection program.  United States v. Crockett, 506 F.2d 759, 762-63 (5th Cir. 1975).

Because Parra had a full and fair opportunity to extract impeaching evidence from the key government witnesses, no abuse of discretion occurred regarding the district court's limitation of Parra's cross-examination.  The district court permitted Parra to elicit testimony from Angel and Patricia that the government brought fifteen of their family members to the United States, in an effort to protect them from the members of the conspiracy, but did not allow further questioning about

the details regarding the relatives' participation in the witness protection program. Additionally, Parra was permitted to challenge the Chains' credibility through various other avenues, such as questioning their motivation to provide safety for their family members, and eliciting that they hoped to receive lesser sentences and that the government allowed them to avoid their debts in Colombia. Finally, the line of questioning might have endangered the family members because it may have revealed their whereabouts. Accordingly, we conclude that the district court did abuse its discretion.

## II. Admission of Evidence

Next, Parra argues that the district court erred by admitting evidence of communications between Angel and Parra's brother, Orlando Parra-Mercado ("Orlando"), occurring before Angel became involved in the conspiracy at a time when he was acting as an attorney for Orlando, and involving Orlando's alleged prior criminal activities. Parra posits that the evidence established that Angel represented Orlando. Parra further argues that the district court erred by admitting evidence of the threats made by Orlando because: (1) the threats were made when Orlando was in Colombia, and there was no evidence that Parra knew about them; (2) had Parra been allowed to cross-examine Angel and Patricia about the witness

5

protection program, it would have been revealed that the threats were fabricated; and (3) the threats were unforeseeable to Parra. Parra also argues that, because the indictment did not identify his co-conspirators, the statements of his co-conspirators, such as evidence about the arrest one co-conspirator, Ricardo Linares, and the computer disk found in his residence, should not have been admitted without the court's explicit determination that they were admissible under Federal Rule of Evidence 801(d)(2)(E). He posits that "the record is replete with inadmissible hearsay testimony," including statements made by Orlando. In the conclusion section of his brief, Parra asserts that the cumulative effect of all of the errors warranted the reversal of his conviction.

We review evidentiary rulings of the district court for an abuse of discretion. United States v. Delgado, 321 F.3d 1338, 1347(11th Cir. 2003). "On appeal, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial effect." United States v. Elkins, 885 F.2d 775, 784 (11th Cir. 1989). However, "[w]hen the opponent of evidence fails to object to its admission and thus denies the trial court an opportunity to cure immediately any error created by the admission," we review only for plain error. United States v. Chilcote, 724 F.2d 1498, 1503 (11th Cir. 1984). Under plain error review, we "correct only for errors that are particularly

6

egregious and that seriously affect the fairness, integrity or public reputation of judicial proceedings, and then only when a miscarriage of justice would result." United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003) (internal quotations and citations omitted).

a. Attorney-Client communications

Because the only evidence that Parra points to on appeal as violative of the attorney-client privilege is evidence that his own counsel solicited on cross-examination, Parra cannot now complain that the district court plainly erred in admitting the evidence.

b. Evidence of Threats

Pursuant to Fed.R.Evid. 402, all relevant evidence is admissible. Under Fed.R.Evid. 403, however, relevant evidence is excluded if the danger of unfair prejudice substantially outweighs its probative value. "Rule 403 is an extraordinary remedy which the district court should invoke sparingly." Elkins, 885 F.2d at 784.

Parra has failed to establish that the admission of evidence of threats made by his co-conspirator substantially affected his rights, or that error occurred in the

court's compliance with Rule 801.   Parra did not object below to the testimony regarding the threats and identifies no legal reason why the testimony's admission was an abuse of discretion.

### c.   Co-conspirators' statements

Rule 801(d)(2)(E) provides that "statements of co-conspirators made during the course and in furtherance of the conspiracy are not hearsay." United States v. Hasner, 340 F.3d 1261, 1274 (11th Cir. 2003), cert. denied, 543 U.S. 810 (2004). In order to admit evidence under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence that "(1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." Id.

Because Parra identifies no specific co-conspirator statement that should have been excluded from evidence, and, in the instances when Parra objected to the introduction of co-conspirators' statements, the district court made specific findings, the district court did not err in admitting evidence of statements made by Parra's co-conspirators.

### III. Requested Jury Instruction

Next, Parra argues that, because his defense was tailored toward showing

8

that the government failed to investigate the character of Ray Bayona and the Melodico company and to corroborate the key witnesses' statements, the district court erred by denying his requested "theory of defense" instruction. The proposed instruction stated: "The [g]overnment in this cause has the burden of proving the [d]efendant guilty beyond a reasonable doubt. If you find that the failure to investigate and corroborate the alleged co-conspirators' declarations causes you to have reasonable doubt, then you must find the [d]efendant not guilty." Parra posits that while some of the government's oversights could be covered by the "reasonable doubt" instruction, his instruction nonetheless was required because some oversights were too significant to be covered, and the addition of several smaller oversights by the government had a cumulative impact.

We "review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001) (internal quotations and citations omitted). We will only find reversible error if: "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to prepare an effective defense." Id. Moreover, a district court is "vested with broad discretion in formulating [its] charge to the jury so long as it accurately reflects the law and

the facts." United States v. Silverman, 745 F.2d 1386, 1395 (11th Cir. 1984). A "defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." United States v. Lively, 803 F.2d 1124, 1126 (11th Cir. 1986) (emphasis in original) (internal quotations and citations omitted).

As Parra conceded at trial, and the district court found, Parra's proposed jury instruction was sufficiently covered by the instruction defining reasonable doubt. Parra was able to present his theory of the defense in his closing argument.

Upon careful review of the record and consideration of the parties' briefs, we discern no reversible error regarding Parra's convictions and, accordingly, we affirm them.

### IV. Parra's sentence

Finally, Parra argues that his sentence violates Booker, because it was enhanced based on his role in the offense and the drug quantity, which were not charged in the indictment, admitted by him, or proven to a jury. He asserts that the district court committed constitutional error when it enhanced his sentence based on its factual findings as to the drug amount and his role, and statutory error when it applied the guidelines in a mandatory fashion. He contends that the government

could not show that the errors were harmless, since the district court: (1) specifically noted that it was imposing the lowest possible sentence in the guideline range; (2) limited Parra's sentences to concurrent, instead of consecutive, terms of incarceration; and (3) rejected the government's request for an alternative sentence. Parra also contends that the district court erred by enhancing his sentence based on his leadership role in the offense, arguing that the evidence established that Orlando was the leader who organized the activities of the co-conspirators and that his role was that of a person who ran errands and made deliveries for Orlando. He points out that Orlando recruited and advised Angel, organized Angel's delivery of money to certain co-conspirators, provided Angel with cell phones, recruited Patricia, conducted the necessary transactions for the movement of the cocaine into the United States, overrode Parra's decision to have Patricia move out of the stash house, conducted the leadership of the organization on the day of the seizure, sent Angel's sister to visit him in prison to convey threats, and provided support for Angel's family.

a.      Booker error

Because Parra objected to his sentence based on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 403 (2004), we review his sentence de novo in light of Booker. See United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

11

Under this standard, we will reverse only if any error was harmful. Id.

In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court also held, in Blakely, that the imposition—based solely on the sentencing judge's factual findings—of a sentencing enhancement violated the defendant's Sixth Amendment rights because the facts supporting the findings neither were admitted by the defendant, nor found by a jury. Blakely, 542 U.S. at 296-97, 124 S.Ct. at 2534-38. After Parra was sentenced and while his case was pending on direct appeal, the Supreme Court, in Booker, extended Blakely to the Sentencing Guidelines and held that the mandatory nature of the Guidelines rendered them incompatible with the Sixth Amendment's guarantee of a right to a jury trial. Booker, 543 U.S. at 231-36 , 125 S.Ct. at 749-51. The Court ruled that sentencing courts nevertheless must consider the Guidelines together with the factors set forth in § 3553(a) when imposing sentences. Id. at 244, 125 S.Ct. at 765.

In United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (emphasis in original), cert. denied, 125 S.Ct. 2935 (2005), we stated that, under

12

the holding in Booker, "the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury."  We since have held that there are two types of Booker errors: (1) constitutional error resulting from enhancements based on judicial fact-finding; and (2) non-constitutional statutory error resulting from mandatory application of the Sentencing Guidelines.  United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). We have held that, where the defendant admitted to the facts that enhanced his sentence, there was no Sixth Amendment violation under Booker.  Id. at 1330.

A different standard of reviewing for harmless error applies depending on the type of Booker error.  See United States v. Mathenia, 409 F.3d 1289, 1291 (11th Cir. 2005).  "When the error is of the constitutional variety, a higher [harmless-error] standard is applied and it must be clear beyond a reasonable doubt that the error complained of did not contribute to the sentence obtained."  United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005) (internal quotations omitted).  "The burden to prove the error was harmless beyond a reasonable doubt rests squarely on the government."  Id.

Parra objected to the district court's factual finding that he was leader and

13

application of the enhancement.  Therefore, he made an objection to a constitutional error.  The government concedes that it cannot show that the error is harmless and we agree: based on statements the district court made,  it is unclear what it would have done had there not been a mandatory sentencing scheme.  Therefore, Parra's sentence is vacated.

b. Role Enhancement

We review for clear error a district court's determination of a defendant's role in the offense.  United States v. DeVaron, 175 F.3d 930, 937 (11th Cir. 1999) (en banc).  Section 3B1.1(a) provides for a four-level enhancement if a "defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).  "The government bears the burden of proving by a preponderance of the evidence that the defendant had an aggravating role in the offense."  United States v. Yeager, 331 F.3d 1216, 1226 (11th Cir. 2003).   In determining the nature of the defendant's role, the court may consider "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, comment. (n.4).

In addition, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." Id.

The district court did not clearly err by applying a four-level enhancement based on Parra's role as an organizer or leader. While the evidence may have established Orlando as a leader in the organization, it also established that Parra was the leader and organizer of operations in the United States, while Orlando was in Colombia. The record does not support Parra's claims of being only a courier or errand boy but rather shows his planning and organizing of the United States size of the operation.

As the government concedes, because Parra's sentence was enhanced, under a mandatory guidelines system, based on facts that were not charged in the indictment, admitted by Parra, or found by a jury, the district court committed constitutional and statutory error in sentencing him, and, because it is not clear beyond a reasonable doubt that these errors were harmless, Parra's sentence is vacated and remanded for resentencing in light of Booker. We note, however, that the district court did not err factually by applying the role enhancement.

**CONVICTIONS AFFIRMED, SENTENCE VACATED AND REMANDED.**[1]

---

[1] Parra's request for oral argument is denied.