[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-4094

_____

D. C. Docket No. 97-00660-CR-UUB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 02, 2001
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee-Cross-Appellant,

versus

BRADLEY FULFORD,

Defendant-Appellant,

and

LEONARDO GAGE,

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(October 2, 2001)**

Before MARCUS, WILSON, and MAGILL*, Circuit Judges.

_____

*Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

MAGILL, Circuit Judge:

Appellants Bradley Fulford and Leonardo Gage were convicted of various federal offenses stemming from their participation in a carjacking conspiracy. Fulford and Gage appeal their convictions, and the government cross-appeals, claiming that the district court erred in failing to sentence Gage to life imprisonment under the federal "three strikes" statute, 18 U.S.C. § 3559. We affirm Appellants' convictions and Gage's sentence.

## I.

On February 18, 1997, Luis Iglesias drove his Chevrolet Blazer to the Miami home of Otto Regalado, where he parked the Blazer in the driveway and began to work on it. Shortly thereafter, Leonardo Gage arrived and directed Regalado to page Bradley Fulford. Fulford returned the page and spoke with Gage, discussing the Blazer and its location. A short while later, Fulford arrived at Regalado's house wearing black jeans, a black sweater, and a ski mask. Fulford pointed a chrome-plated semi-automatic handgun at Iglesias, who was sitting in the driver's seat of the Blazer. Fulford told Iglesias to "[g]et the fuck out of the car." After Iglesias got out of the car and moved to the other side of the street, Fulford drove away in the Blazer.

As Fulford drove off, Iglesias dialed 911. The Metro Dade Police responded and, as a result of their investigation, the Blazer was found later that night parked in the backyard of Gage's home, a few blocks away from the site of the carjacking. Fulford and Gage were arrested and questioned by the FBI. Both confessed their involvement in the carjacking.

A grand jury in Miami issued a three-count indictment charging Fulford and Gage with various carjacking and firearms violations. The indictment charged Fulford and Gage with conspiracy to carjack a vehicle at gunpoint, conspiracy to carry a firearm in relation to a crime of violence, and conspiracy to obstruct a criminal investigation, all in violation of 18 U.S.C. § 371. In addition to the conspiracy offenses, the indictment charged Fulford and Gage with carjacking, in violation of 18 U.S.C. § 2119, and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

Prior to trial, the government filed an Information notifying Gage that if convicted, he faced mandatory life imprisonment under § 3559. Fulford and Gage were tried jointly. At that trial, Fulford took the stand and admitted that he had stolen the Blazer from Iglesias at gunpoint. The jury returned a guilty verdict against Fulford on all counts, and against Gage on the conspiracy count. The district court sentenced Fulford to 138 months imprisonment and Gage to 60

months imprisonment.  Fulford and Gage raise numerous issues on appeal concerning their convictions and sentences.  The government cross-appeals the district court's failure to sentence Gage to life imprisonment under the federal "three strikes" statute, § 3559.

## II.

### A.    Sufficiency of the Evidence

Fulford contends that the evidence presented at trial was insufficient to satisfy the specific intent requirement of the federal carjacking statute, § 2119.  We review this contention de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict.  See United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998).

To constitute carjacking under § 2119, the taking of a motor vehicle must be committed with the "intent to cause death or serious bodily harm." 18 U.S.C. § 2119.  The intent requirement of § 2119 is satisfied where the government "proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car."  Holloway v. United States, 526 U.S. 1, 12 (1999).  The defendant's intent "'is to be judged objectively from the visible conduct of the actor

and what one in the position of the victim might reasonably conclude.'" United States v. Guilbert, 692 F.2d 1340, 1344 (11th Cir. 1982) (citation omitted).

In this case, Fulford put a gun to Iglesias's face and told him to "[g]et the fuck out of the car." Iglesias testified that he feared for his life, and Fulford testified that he had been previously convicted of armed robbery. This evidence is sufficient for a reasonable jury to conclude that Fulford had the conditional intent to kill or seriously harm Iglesias if necessary to steal the Blazer.

## B. **Bruton**

Fulford asserts for the first time on appeal that the district court erred in admitting evidence of two taped conversations between his co-defendant, Gage, and an informant, discussing Fulford's involvement in the theft of the Blazer. As a result of Fulford's failure to raise this claim before the district court, we review the district court's decision for plain error. See United States v. Brazel, 102 F.3d 1120, 1141 (11th Cir. 1997). To meet the plain error standard, Fulford must show that: (1) the trial court erred; (2) the error was plain, clear, or obvious; and (3) the error affected his substantial rights. See id. Here, even assuming that the first two elements of the plain error standard are met, Fulford has failed to show that the trial court's error affected his substantial rights.

Fulford asserts that the taped conversations between Gage and the informant

constituted facially incriminating statements of a nontestifying co-defendant and, thus, that their admission constitutes a violation of his Sixth Amendment rights under Bruton v. United States, 391 U.S. 123 (1968). At trial, Fulford took the stand in his own defense and admitted his participation in the theft. Therefore, even if the challenged statements showed that Fulford was involved in the theft of Iglesias's vehicle, their admission provided the jury with no additional evidence incriminating Fulford. Accordingly, admission of the challenged tapes did not affect Fulford's substantial rights, and thus the district court did not commit plain error in admitting them.

## C.    Jury Instructions

Fulford and Gage challenge various jury instructions given by the district court, as well as the court's failure to give other requested instructions. Our review of a trial court's jury instructions is limited; if the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction. Trujillo, 146 F.3d at 846. Under this standard, "'we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled.'" Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997) (citation omitted). "We will reverse

6

the district court because of an erroneous instruction only if we are 'left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" Id. (quoting Johnson v. Bryant, 671 F.2d 1276, 1280 (11th Cir. 1982)).

"We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Condon, 132 F.3d 653, 656 (11th Cir. 1998). We will find reversible error in the refusal to give a requested instruction only if: (1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense. United States v. Martinez, 83 F.3d 371, 376 (11th Cir. 1996).

### 1. Intent Instruction

Fulford asserts that the district court erred in refusing to give his proposed instruction on the intent required for carjacking under § 2119. Fulford's requested intent instruction stated: "Evidence that the defendant used a gun to frighten the victim is not sufficient in and of itself to prove intent to harm." The district court gave the following instruction on the requisite intent for carjacking:

> The defendant can be found guilty only if . . . the defendant intended
> to cause death or serious bodily harm when the defendant took the
> motor vehicle.

7

Whether the defendant 'intended to cause death or serious bodily harm' is to be judged objectively from the conduct of the defendant as disclosed by all the evidence in the case and from what one in the position of the alleged victim might reasonably conclude. If, after considering all of the evidence and what one in the position of the alleged victim might reasonably conclude, you find beyond a reasonable doubt that the defendant intended to cause death or serious bodily injury in the event that Luis Iglesias failed to relinquish control of his automobile, this is a sufficient basis for finding that the government has proved the fourth element of the offense, specifically that the defendant intended to cause death or serious bodily injury.

The district court's instruction directly addressed the subject of the requested instruction, i.e., Fulford's intent, and correctly directed the jury to judge his intent objectively from his conduct as disclosed by all the evidence in the case, and from what one in the position of the victim might reasonably conclude. Furthermore, the court's failure to give the requested instruction in no way impaired Fulford's ability to argue to the jury that his conduct indicated that he intended to frighten Iglesias, not that he intended to cause death or serious bodily injury. Fulford testified at trial that the gun he pointed at Iglesias was a BB gun, though he had indicated to the FBI that he had used a real gun. The district court instructed the jury to evaluate the credibility of Fulford's testimony "in the same way as that of any other witness." In closing, Fulford's counsel argued, on the basis of Iglesias's testimony, that Fulford's objective conduct did not indicate an intent to cause serious bodily harm or death.

8

We conclude that the district court's actual charge to the jury substantially covered Fulford's requested intent instruction and did not substantially impair his ability to present an effective defense. Therefore, the district court did not abuse its discretion by refusing to give Fulford's proposed instruction.

### 2. Conspiracy Instruction

Gage challenges the district court's instruction on the conspiracy count. Specifically, he contends that the instruction impermissibly allowed the jury to convict him of either conspiracy to carjack or conspiracy to violate § 924(c). Because Gage failed to object to the instruction below, we review the instruction for plain error. See Brazel, 102 F.3d at 1140. This court previously has held that where an indictment alleges a conspiracy to commit several offenses, the charge is sustained by proof of conspiracy to commit any one of the offenses. United States v. Ross, 131 F.3d 970, 984 (11th Cir. 1997). Therefore, the jury properly could have convicted Gage of either conspiracy to carjack or conspiracy to violate § 924(c). Accordingly, the district court did not err in so instructing the jury.

### 3. Supplemental Instruction

Gage next asserts that the district court gave an erroneous supplemental instruction in response to a jury question. During deliberation, the jury asked the court whether the word "before," in an instruction explaining the conspiracy

charge, meant "before the incident or any time prior to the arrest, including after the incident."  The court read the question into the record and engaged in a lengthy colloquy with the parties.  At the end of that colloquy, the court read its proposed instruction, which stated:

> You  must be able to find beyond a reasonable doubt that the defendant joined the conspiracy before the carjacking was completed. It is up to you, from your consideration of all the evidence, both before and after the incident, to decide when the carjacking was completed and who became a member of the conspiracy to carjack the car.

Gage's attorney responded:

> Judge, for the record, in light of the Court's consideration of the issue Mr. Black brought up, the instruction is acceptable to us.  It's still our point of view that as a matter of law the carjacking ends - that you can't join the conspiracy once the car is actually taken.

The court then suggested that the parties research the question of when a carjacking ends, so that they would have an answer in the event that the jury asked for further clarification of the supplemental instruction.  Based on the parties' research, Gage requested an instruction that the carjacking was completed no later than the completion of flight from the robbery.  The court refused to give this instruction because there was no flight in this case and because the jury was continuing to deliberate and had not asked for further clarification.

10

Gage now contends that the district court's supplemental instruction was erroneous and that when the conspiracy ended was a question of law rather than a question of fact for the jury. However, it is clear from the record that at the time the instruction was given, Gage had indicated that it was acceptable to him. "It is 'a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party.'" Ross, 131 F.3d at 988 (citation omitted). Accordingly, having agreed to the court's proposed instruction, Gage appears to have waived his right to challenge that instruction on appeal.

Gage attempts to argue that his acceptance of the court's instruction did not render it invited error because his counsel later requested an additional instruction based on subsequent research. Gage's argument is without merit. The record is clear that immediately before the court gave the instruction to the jury, Gage's counsel stated "the instruction is acceptable to us." Gage's attempt, some five hours later, to submit an additional instruction to the jury has no bearing on his earlier unconditional acceptance of the court's instruction. Furthermore, we note that Gage does not appeal the district court's refusal to give his additional proposed instruction. Accordingly, because we find that the district court relied upon Gage's explicit acceptance of its proposed instruction in submitting that instruction to the jury, we conclude that Gage has waived his right to appeal that instruction.

11

Because we hold that Gage invited the district court's supplemental instruction, we need not reach his contention that the instruction constituted plain error.

**D.    Three Strikes**

The government cross-appeals, contending that the district court erred in failing to sentence Gage to life imprisonment under the federal "three strikes" statute, § 3559.  We review the application of law to sentencing issues de novo. United States v. Manella, 86 F.3d 201, 203 (11th Cir. 1996).

Prior to trial, the government served Gage with an Information, notifying him that, if convicted, he faced a mandatory life sentence under § 3559, based on two prior "serious violent felony" convictions in Florida state courts.  One of these alleged prior "serious violent felony" convictions was for aggravated assault. Section 3559 states, in pertinent part:

> Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if . . . the person has been convicted . . . on separate prior occasions in a court of the United States or of a State of . . . 2 or more serious violent felonies.

18 U.S.C. § 3559(c)(1)(A)(i) (2000).  Section 3559 defines "serious violent felony," as related to Gage's conviction for aggravated assault, as "a Federal or State offense, by whatever designation and wherever committed, consisting of . . . firearms use."  18 U.S.C. § 3559(c)(2)(F)(i).  The phrase "firearms use" is defined

12

in § 3559 as

> an offense that has as its elements those described in section 924(c) . . . if the firearm was brandished, discharged, or otherwise used as a weapon and the crime of violence . . . during and relation to which the firearm was used was subject to prosecution in a court of the United States or a court of a State, or both.

18 U.S.C. § 3559(c)(2)(D).

At sentencing, the district court concluded that it could not look beyond the judgment in the Florida aggravated assault case to determine whether the conviction constituted a "serious violent felony" for purposes of § 3559. As a result, the court declined to impose a mandatory life sentence. The government asserts that in determining whether Gage's prior conviction qualified as a "serious violent felony," the court was required to consider not only the judgment of conviction, but also the underlying aggravated assault Information. The government further argues that because the Information reveals that Gage committed assault with a firearm, the offense qualifies as a "strike" under § 3559.[1] Thus, the central inquiry is whether § 3559 allowed the district court to consider the aggravated assault Information in determining if that conviction qualifies as a

---

[1]The Information to which Gage pled nolo contendere charged that he "did unlawfully, feloniously and intentionally threaten by word or act to do violence to the person of another . . . coupled with an apparent ability to do so and did some act, to wit: Pointed a firearm at or in the direction of [the victim] and/or shot at or in the direction of [the victim]."

13

"serious violent felony."

The government's contention that we should require the district court to look at the Information in Gage's aggravated assault case in determining whether that conviction constitutes a "serious violent felony" relies on Taylor v. United States, 495 U.S. 575 (1990), and United States v. Spell, 44 F.3d 936 (11th Cir. 1995). In Taylor, the Supreme Court examined the meaning of the word "burglary" under 18 U.S.C. § 924(e), which provides a sentence enhancement for a defendant who a court convicts of unlawfully possessing a firearm and who has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e) (2000). Section 924(e) defines "violent felony," in relevant part, as a crime that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. at § 924(e)(2)(B). The defendant in Taylor argued that his prior burglary convictions should not count as "strikes" under § 924(e)(2)(B)(ii) "because they did not involve 'conduct that presents a serious potential risk of physical injury to another.'" 495 U.S. at 579 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).

The Taylor Court defined "burglary" according to its "generic, contemporary

14

meaning." Id. at 598. However, the Court realized that some states define burglary more broadly by, for instance, eliminating certain requirements of burglary's generic meaning. Id. at 599. Thus, the Court addressed "the question whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary." Id. at 599-600. This question required the Court to determine "whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." Id. at 600.

Taylor held that § 924(e) requires "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. Therefore, the Court concluded that § 924(e) "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." Id. at 602. However, the Court went on to state that this categorical approach "may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." Id. Specifically, the Court stated that in a burglary case where the state burglary statute encompassed some offenses that would satisfy the enhancement statute and others that would

15

not, the district court could look at the charging paper and jury instructions to determine if the defendant actually was convicted of an offense satisfying the enhancement statute.  Id.  Therefore, Taylor held "that an offense constitutes 'burglary' for purposes of a § 924(e) sentence enhancement if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant."  Id.

In Spell, this court discussed the Taylor approach in a case involving sentencing enhancement under U.S.S.G. § 4B1.1.  The government argued that the district court should count the Spell defendant's prior burglary conviction as a "strike" under § 4B1.1.  44 F.3d at 937-38.  Section 4B1.1 provides for a sentencing enhancement

> if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guidelines Manual § 4B1.1 (1992) (quoted in Spell, 44 F.3d at 938).  Section 4B1.2 defines "crime of violence" as

> any offense . . . that--(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

16

physical injury to another.

Id. at § 4B1.2(1) (quoted in Spell, 44 F.3d at 938). The defendant contended that his burglary conviction could not count as a "strike" under § 4B1.2(1)(ii) because it was not a "crime of violence." Spell, 44 F.3d at 938. The district court disagreed, finding the burglary to be a "crime of violence" by looking at the charging document. Id. On appeal, the defendant argued that the district court erred by looking at the charging document in finding his burglary conviction to be a "crime of violence." Id. at 939.

Although observing that the Sentencing Guidelines explicitly reject the categorical approach embraced in Taylor, this court recognized that even under the Guidelines approach, "the ability to 'look behind' state convictions in a federal sentencing proceeding is very limited." Id. However, consistent with Taylor, the court held that "a district court . . . may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." Id. Because the defendant was convicted of burglary under a statute permitting conviction for some conduct that constitutes a "crime of violence" and some that does not, we held that the district court "correctly went beyond the face of the [burglary] conviction in determining whether it was for a crime of violence." Id. at 939-40.

17

Here, as in <u>Taylor</u> and <u>Spell</u>, the state statute under which Gage was charged encompasses some offenses that would satisfy the enhancement statute, and others that would not. The Florida statute that Gage was convicted under defines aggravated assault, in pertinent part, as "an assault . . . [w]ith a deadly weapon without intent to kill." Fla. Stat. Ann. § 784.021(1)(a) (West 2000). Accordingly, under the Florida statute, aggravated assaults involving the use of firearms would satisfy the definition of "firearms use" under § 3559(c)(2)(D), while others, involving deadly weapons other than firearms, would not. Thus, if <u>Taylor</u> and <u>Spell</u> control this case, we must reverse Gage's sentence and remand for re-sentencing.

However, we conclude that the differences between the language of § 3559(c)(2)(D) and the language of the provisions interpreted in <u>Taylor</u> and <u>Spell</u> require us to distinguish those cases. Section 3559(c)(2)(D) defines "firearms use" as "an offense that has *as its elements* those described in section 924(c) or 929(a)." 18 U.S.C. § 3559(c)(2)(D) (emphasis added). Neither § 924(e)(2)(B)(ii)--interpreted in <u>Taylor</u>--nor § 4B1.2(1)(ii)--interpreted in <u>Spell</u>--reference the elements of the offense. Instead, these provisions reference the defendant's crime. <u>See</u> 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony," in relevant part, as "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives,

18

or otherwise involves conduct that presents as serious potential risk of physical injury to another"); U.S. Sentencing Guidelines Manual § 4B1.2 (defining "crime of violence," in relevant part, as "any offense . . . that . . . is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another").  Although both § 924(e) and § 4B1.2 also permit convictions to be counted as "strikes" if they have "as an element the use, attempted use, or threatened use of physical force against the person of another," neither Taylor nor Spell addressed these provisions.  18 U.S.C. § 924(e)(2)(B)(i); U.S. Sentencing Guidelines Manual § 4B1.2(1)(i).

This court previously has examined the phrase "as an element."  In United States v. Gonzalez-Lopez, 911 F.2d 542 (11th Cir. 1990), we held:

> The phrase 'as an element' only permits an examination of the statute under which the defendant was convicted to determine if the statute has as an ingredient the requisite use of force (or attempted or threatened use of force).  When Congress uses a word like 'element' in a federal criminal statute without otherwise defining it, we assume that the word carries its accepted meaning in the criminal law.  At common law the word 'element' refers to a 'constituent part[] of a crime which must be proved by the prosecution to sustain a conviction.'  Determining the elements of a crime, therefore, involves a legal inquiry as opposed to a factual inquiry.  In other words, the analysis of a crime under section 16(a) should focus on the statute which defines the offense–evidence establishing the particular conduct of the defendant on the day the crime was committed does not bear on that inquiry.

Id. at 546-47 (citations omitted) (interpreting the definition of "crime of violence"

19

contained in 18 U.S.C. § 16(a) ("an offense that has as an element the use,

attempted use, or threatened use of physical force . . ."), which then was

incorporated into U.S.S.G. § 4B1.2).[2]  Section 3559 defines "serious violent

felony," as related to Gage's conviction for aggravated assault, as "a Federal or

State offense, by whatever designation and wherever committed, consisting of . . .

firearms use."  18 U.S.C. § 3559(c)(2)(F)(i).  The phrase "firearms use" is defined,

in relevant part, as "an offense that has as its elements those described in section

924(c) or 929(a)."  18 U.S.C. § 3559(c)(2)(D).  Sections 924(c) and 929(a) both set

out as elements of the crime necessary for conviction, that the defendant "use[] or

carr[y] a firearm."  18 U.S.C. § 924(c)(1)(A) (also permitting conviction for a

defendant "who, in furtherance of any such crime, possesses a firearm"); 18 U.S.C.

§ 929(a).

We hold that because § 3559(c)(2)(D) refers only to the elements of the

offense on which the enhanced statute is to be predicated, the sentencing court may

not look past the conviction to the charging document.  The Florida statute under

which Gage was convicted for aggravated assault does not require proof of

----

[2]Although an intervening change in the Sentencing Guidelines' commentary persuaded the Spell court to reject the "categorical approach" of Gonzalez-Lopez in examining 18 U.S.C. § 16(b), 44 F.3d at 939, Gonzalez-Lopez's discussion of the phrase "as an element" under § 16(a) remains good law.

firearms use as an element of the crime, so it is not a qualifying crime under § 3559(c)(2)(D). Therefore, the district court correctly refused to look to the Information from Gage's aggravated assault case in determining whether that conviction constitutes a "strike" under § 3559.

## III.

Based upon the foregoing, we AFFIRM the convictions of Fulford and Gage and the sentence of Gage.