[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16958
Non-Argument Calendar

_____

D. C. Docket No. 05-80020-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NATHANIEL BEVERLY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 24, 2006)**

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Nathaniel Beverly appeals his 210-month sentence for possession of a

firearm by a convicted felon and possession of ammunition by a convicted felon, in

violation of 18 U.S.C. §§ 922(g)(1), 924(e).  After review, we affirm.

## I.  BACKGROUND

### A.  Offense Conduct

West Palm Beach Police Officer Darren Jenne attempted to conduct a traffic stop of a pickup truck driven by Beverly.  Beverly pulled into a parking area behind his residence and admitted to Officer Jenne that his drivers license was suspended.  When Officer Jenne tried to arrest Beverly, Beverly struggled, escaped from Officer Jenne's grasp and ran inside the residence.

Officer Jenne, accompanied by Officer Raymond Shaw, followed Beverly into the house, where Beverly was hiding in the attic.  While in the residence, both officers observed a firearm in a bedroom on the second floor.  The officers eventually persuaded Beverly to come down from the attic and then arrested him.

Beverly consented to the search of the second floor bedroom, which was his bedroom.  During the search, officers found a rifle underneath the bed, a shotgun leaning against a dresser, two rifle scopes and loose rounds of ammunition on top of a dresser.  Officers also later discovered that the rifle was loaded with four rounds of ammunition.

When Officer Jenne interviewed Beverly after his arrest, Beverly stated that he had recently moved into his uncle's house and that he didn't own the guns.  He

2

found the "old shotgun" already in the room when he moved in. Beverly discovered the rifle in a closet and moved it under the bed because he was afraid that, if he later were moving clothes around, he might bump it or cause it to drop. Beverly stated that the gun had been under the bed for "awhile." Although Beverly had not tried to get rid of the guns, he had spoken to his uncle about them and his uncle had told him to just "throw them in the corner." Beverly also admitted that, on one occasion, he had opened the box of ammunition to take a look. Finally, Beverly admitted to Officer Jenne that, as a convicted felon, he knew that he should not have guns.

## B. District Court Proceedings

Beverly was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count One), and possession of one or more rounds of ammunition by a convicted felon, also in violation of §§ 922(g)(1) and 924(e) (Count Two). During the course of his trial, Beverly asked the court to give this jury instruction regarding mere inspection of contraband:

> [T]he mere inspection or holding of contraband is not sufficient to establish possession if in inspecting or holding the contraband the defendant does not have either the ability or the intent to exercise control over the contraband.

The government objected, asking that the district court give the Eleventh Circuit pattern jury instruction with respect to possession. The district court rejected

3

Beverly's proposed instruction because it did not believe the instruction to be a correct statement of the law. The district court also rejected the instruction because it was not supported by the facts in the case and noted that Beverly's actions with regard to the firearms did not constitute a "momentary inspection."

The district court gave the jury the following instructions regarding the elements of knowing possession:

> The word knowingly . . . means the act was done voluntarily and intentionally and not because of a mistake or accident. . . .
>
> The law recognizes several kinds of possession. We say that a person may have actual possession or constructive possession. Also, a person may have sole possession or joint possession. . . .
>
> A person who knowingly has direct physical control of something is then in actual possession. . . .
>
> A person who is not in actual possession, but who has both the power and the intention to later take control over something, either alone or together with somebody else, is in constructive possession.
>
> So, constructive possession means you do not have actual control of it right then, but if a person who has both the power and the intention to later take control over something, either alone or together with someone else, then that person is in constructive possession.
>
> If one person alone has possession of something, we say that possession is sole.
>
> If two or more people share possession, we say that possession is joint. . . .
>
> To establish that the defendant acted knowingly, it is not

4

necessary for the government to prove that the defendant knew that his possession of a firearm was unlawful. Rather, the government need only show that the defendant consciously possessed what he knew to be a firearm.[1]

During deliberations, the jury sent the district court the following note asking about "knowingly" and whether they should vote based on the law or how a person perceived the law, as follows:

> We are having a problem - Do we base our vote on "the law" or do we look at the person (how they might have . . . perceived the law) - . . . What is knowingly?

In response, the district court reminded the jury to follow the law. The district court then explained that, whether Beverly correctly understood the law was not an issue for the jury to consider. In reviewing the definition of "knowingly," the district court stated that "[w]e are not talking about knowingly in terms of whether someone understands the law" but rather whether the act of possession was "done voluntarily and intentionally by Mr. Beverly and not because of a mistake or accident." Then the district court gave the jury the following example, to which Beverly objected:

> If somebody handed a paper bag to someone who happened to be a convicted felon and they had no idea what was in the paper bag, they may be possessing that paper bag they got it in their hand, see. But if they open the paper bag and they go, "oh, my goodness, this is a gun.

---

[1] The district court explained that the definitions of the words "possession" and "knowingly" also applied to the crime of possession of ammunition by a convicted felon.

I can't have this." They did not have - - they did not intentionally possess it, and they give it up.

The district court explained that the example was "not meant to be exclusive," but was used only as an illustration. The district court informed the jurors that they needed to determine if the events happened because of a mistake or accident, which does not refer to whether someone understood the law, but only refers to whether they understood what they were doing.

Following a sidebar with counsel, the district court readdressed the jurors, telling them that "knowingly" was defined on pages nine and ten of the jury instructions and restating the initial instruction on knowingly as meaning an act that was done "voluntarily and intentionally and not because of a mistake or accident." The district court explained that the jury must determine if the government proved beyond a reasonable doubt that Beverly "possessed either or both the gun and the ammunition," and if that possession was knowing, that is, "was it possessed voluntarily and intentionally and not because of a mistake or accident."

The jury continued deliberations and returned a second note requesting that the district court read back its answer to its earlier question or give them a copy. Over Beverly's objection, the district court read back to the jury its earlier explanation. The district court emphasized that the earlier explanation must be

6

considered in light of all the jury instructions and that the court did not want to overemphasize one part of the instructions over all of them. The jury concluded its deliberations and returned a guilty verdict on both counts.

Prior to sentencing, the presentence investigation report ("PSI") set Beverly's offense level at 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B), for being an armed career criminal. The armed career criminal enhancement was based on these felony convictions: (1) manslaughter; (2) possession of cocaine with intent to sell; (3) burglary of a dwelling; (4) possession of heroin with intent to sell; and (5) robbery. With a total offense level of 33 and a criminal history category of V, Beverly's advisory guidelines range was 210 to 262 months' imprisonment.

Beverly objected to the application of the armed career criminal enhancement because the prior convictions had not been alleged in the indictment. However, Beverly did not challenge the existence of his prior convictions. At sentencing, the district court overruled Beverly's objection. Acknowledging that the Sentencing Guidelines are now advisory, the district court found that a sentence within the guidelines range was reasonable and sentenced Beverly to 210 months' imprisonment as to Count One, and did not impose a sentence as to Count Two, which merged with Count One. This appeal followed.

## II. DISCUSSION

7

**A. Jury Instruction**

On appeal, Beverly argues that the district court abused its discretion in refusing to give his proposed "mere inspection" instruction to the jury. "We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Fulford, 267 F.3d 1241, 1245 (11ᵗʰ Cir. 2001) (internal quotations and citations omitted). We will find reversible error only if: "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to prepare an effective defense." Id. While a district court judge is "vested with broad discretion in formulating his charge to the jury so long as it accurately reflects the law and the facts," United States v. Silverman, 745 F.2d 1386, 1395 (11ᵗʰ Cir. 1984), a "defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility," United States v. Lively, 803 F.2d 1124, 1126 (11ᵗʰ Cir. 1986) (quotation marks omitted).

Here, we find no abuse of discretion. This Court has addressed the defense of mere inspection in a possession of drugs case, but not in a possession of a firearm case. In the drug cases, we concluded that the mere inspection of the

8

contraband alone is not sufficient to establish possession in the context of a drug deal. In these cases, the defendant briefly inspected the drugs provided by undercover agents during a "sting operation," but did not consummate the deal or take control of the drugs. See, e.g., United States v. Edwards, 166 F.3d 1362, 1363-64 (11th Cir. 1999); United States v. Derose, 74 F.3d 1177, 1186 (11th Cir. 1996).

The parties do not cite and we cannot locate a case in which we have applied the "mere inspection" defense in a firearm possession case.[2] Nonetheless, we need not decide whether such a defense is available because, even assuming arguendo that it is, a "mere inspection" jury instruction was not supported by the evidence presented at trial. Beverly did not merely briefly inspect the rifle or the ammunition. Beverly also kept the rifle and ammunition in his room over a period of time, thus maintaining the ability to exercise dominion or control over them. This fact distinguishes Beverly's case from the "mere inspection" cases. Therefore, the facts presented at trial did not support a "mere inspection" instruction. In addition and more importantly, the district court's standard

---

[2]Beverly cites United States v. Pedro, 999 F.2d 497 (11th Cir. 1993), in which we concluded that proof of a defendant's mere presence in the vicinity of a gun did not establish possession. 999 F.2d at 502. As noted, Pedro is a "mere presence" case not a "mere inspection" case and therefore does not support Beverly's claim that he was entitled to a "mere inspection" jury instruction. Furthermore, Beverly did not ask for a "mere presence" instruction at trial, perhaps because he admitted to Officer Jenne that he physically moved one of the guns from one location to another inside his room.

9

instructions regarding actual and constructive possession adequately highlighted the importance of control to the meaning of possession and substantially covered the proposed "mere inspection" instruction. Accordingly, the district court did not abuse its discretion in refusing to give Beverly's "mere inspection" instruction.

## B. Supplemental Jury Instruction

Beverly also argues that the district court abused its discretion when it gave the supplemental jury instruction containing the paper bag hypothetical in response to the jury's question about the meaning of the term "knowingly." "A trial court's response to a jury's question is entrusted to its own sound discretion and a conviction will not be reversed in the absence of an abuse of discretion." United States v. McDonald, 935 F.2d 1212, 1222 (11th Cir. 1991). "A challenged supplemental jury instruction is reviewed as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel 'to determine whether the jury was misled and whether the jury understood the issues.'" United States v. Johnson, 139 F.3d 1359, 1366 (11th Cir. 1998) (internal citations omitted). As long as a court's original and supplemental charges, when combined, accurately present the substantive law, ordinarily no reversible error exists. United States v. Sanfilippo, 581 F.2d 1152, 1154 (5th Cir. 1978).[3]

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all the decisions of the former Fifth Circuit handed down on or before

The law generally defines "knowingly" as an "act [that] was done voluntarily and intentionally and not because of mistake or accident." United States v. Arias-Izquierdo, 449 F.3d 1168, 1188 (11th Cir. 2006). Further, because 18 U.S.C. § 922 is a strict liability offense, whether the defendant knew that his conduct was unlawful is irrelevant. United States v. Funches, 135 F.3d 1405, 1408 (11th Cir. 1998). The court's original instruction defined "knowingly" in those terms.

The district court's paper bag example of mistaken possession demonstrated to the jury, in concrete terms, that mistaken or accidental possession has nothing to do with the defendant's understanding of the law, but concerns only whether the defendant knew that he was in fact in possession of a firearm. Beverly complains because the district court stated in the example that the hypothetical person gave up the gun upon realizing what he was holding. However, this statement was necessary to the court's illustration of mistake because, if the mistaken person had continued to hold the gun, his possession no longer would be mistaken but knowing. Thus, the district court's answer was legally accurate with respect to the definition of "knowingly." Both the original instruction and the supplemental example, when combined, accurately presented the substantive law.

---

September 30, 1981.

11

Moreover, the district court took measures to assure that the example did not mislead the jury and that the jury would not assign it undue weight. For instance, the second time that the jury requested that the instructions be read back, the district court emphasized that its explanation should be considered in light of all of the jury instructions, and stated that it did not want to overemphasize any one part of the instructions over the whole. Additionally, the district court explained, when it provided the paper bag example, that the example was only an illustration and was "not meant to be exclusive." Accordingly, the district court did not abuse its discretion in responding to the jury's questions regarding knowing possession.

## C. Armed Career Criminal Enhancement

Beverly argues that his Fifth and Sixth Amendment rights were violated when the district court sentenced him as an armed career criminal based on prior convictions which were not charged in the indictment or found by a jury beyond a reasonable doubt.[4] Beverly admits that his argument is foreclosed by Alemendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219 (1998) and that we have repeatedly explained that, even after Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and United States v. Booker, 543 U.S. 220, 125 S. Ct.

---

[4]Because Beverly timely raised his Fifth and Sixth Amendment challenges in the district court, our review is de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

12

738 (2005), we are bound by <u>Almendarez-Torres</u> until it is explicitly overruled by the Supreme Court. <u>See, e.g.</u>, <u>United States v. Greer</u>, 440 F.3d 1267, 1273-74 (11th Cir. 2006); <u>United States v. Gibson</u>, 434 F.3d 1234, 1246 (11th Cir. 2006).

Furthermore, at sentencing the district court did not resolve any disputed facts related to Beverly's prior convictions.[5] Beverly did not dispute the factual accuracy of the portions of the PSI that listed his prior convictions. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1330 (11th Cir. 2005) (explaining that there is no statutory <u>Booker</u> error where the defendant's sentence was enhanced based on facts to which the defendant did not object in the PSI at sentencing); <u>United States v. Burge</u>, 407 F.3d 1183, 1191 (11th Cir.), <u>cert. denied</u>, 126 S. Ct. 551 (2005). Therefore, the district court did not err in using Beverly's prior convictions to enhance his sentence.

For these reasons, the district court did not err by enhancing Beverly's sentence based on his prior convictions.

**AFFIRMED.**

---

[5]Beverly also does not argue that the district court consulted improper sources of evidence in determining whether his prior convictions qualified for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), and the armed career criminal guidelines enhancement, U.S.S.G. § 4B1.4(b)(3)(B). <u>See</u> <u>Shepard v. United States</u>, 544 U.S. 13, 24-26, 125 S. Ct. 1254, 1262-63 (2005) (limiting the types of evidence a district court can consider to determine whether a prior conviction qualifies under the Armed Career Criminal Act).