[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-17408
Non-Argument Calendar

_____

D.C. Docket No. 3:16-cr-00083-MHT-TFM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STANLEY JAWAN HINTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(March 26, 2018)

Before TJOFLAT, ROSENBAUM, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Stanley Jawan Hinton was convicted of aiding and abetting an armed carjacking. On appeal, he argues that there was insufficient evidence to support his convictions. After careful review, we affirm.

**I.**

In August 2014, Hinton, using an alias, posted an ad on Craigslist for the sale of a 1989 Mercury Grand Marquis. Jeffrey Allen responded to the ad and agreed to purchase the car from Hinton for $2,000. Allen traveled from Alabama to Columbus, Georgia, to make the exchange. Three hours before the exchange, Hinton assured Allen over the phone that he had the "title in hand." But when Allen arrived, Hinton said the title had been lost. Nevertheless, Allen paid Hinton the $2,000 and took possession of the car, with the assurance that Hinton would either find the title or file for lost title in the coming weeks. Also present during the exchange were Hinton's co-defendants Tawanda Sears, who Hinton said was his girlfriend, and Jacinto Robinson, who Hinton said was his brother. Sears collected the money and wrote Allen a bill of sale.

About two weeks later, Allen decided to return the car. He still had not received the title, which had, in fact, been pawned by Sears before the sale. And, within a week or two of the sale, Sears had called him to say that the 26-inch rims on the car, which Allen believed were included in the $2,000 purchase price, were actually rented and $1,000 was still owed on them. Allen contacted Hinton to

2

arrange a return, and they agreed to meet near a gas station to make the exchange. Allen agreed to a refund of $1,800.

Allen's cousin Elicia Allen[1] followed Allen to the gas station in her own car, and she and Allen both testified at trial as to the events that followed. As Allen and Elicia arrived, Hinton was waiting in a Dodge Charger along with co-defendants Robinson, Sears, and Delricco Jones. Hinton and Robinson got out of the Charger and approached Allen. Hinton told Allen that he wanted Robinson, who was a mechanic, to examine the car before making the exchange. After opening the hood to examine the engine, Robinson said he heard a new tapping noise, and he asked to drive the car around the gas station to ensure it was still in good condition. Though skeptical, Allen reluctantly agreed and stepped into the passenger's seat. Hinton got back in the Charger. Robinson began to drive, and as he reached the back of the gas station, he accelerated abruptly. Allen feared Robinson would drive the car away with him, so he hurriedly grabbed the gear shift and placed the car in park.

The Charger pulled up next to the Marquis just after it came to a halt. Jones, who until this time had remained in the Charger, stepped out of the back seat and walked up to the side of the Marquis where Allen was seated. He then pointed a gun at Allen and told him to get out of the Marquis. Fearing for his life, Allen

---

[1] To avoid confusion, we refer to Elicia Allen as "Elicia" in this opinion.

leapt from the car, and Jones took his place in the passenger seat.  Robinson and Jones sped away in the Marquis, with Hinton and Sears following in the Charger.

A grand jury indicted Hinton and his co-defendants on two counts: (1) aiding and abetting a carjacking, in violation of 18 U.S.C. §§ 2119 and 2; and (2) aiding and abetting the brandishing of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2.  Hinton pled not guilty.

A jury found Hinton guilty on both counts following a two-day trial.  At the close of the government's case, and then again after he recalled Elicia to testify briefly, Hinton moved for a judgment of acquittal, arguing that the government proved only an armed robbery of $1,800, not a carjacking.  The court denied these motions and submitted the case to the jury.  Following a guilty verdict, the district court sentenced Hinton to 40 months in prison on Count I and 84 months in prison on Count II, to be served consecutively for a total of 124 months.  Hinton now appeals.

## II.

We generally review challenges to the sufficiency of the evidence de novo, asking whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *United States v. Godwin*, 765 F.3d 1306, 1319 (11th Cir. 2014). In doing so, we view the evidence, whether direct or circumstantial, in the light most favorable to the government and accept all reasonable inferences and

credibility choices that support the jury's verdict. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012); *United States v. Williams*, 390 F.3d 1319, 1324 (11th Cir. 2004). We will not overturn a guilty verdict unless, based on the record evidence, no rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005).

While our review is normally de novo, "we review unpreserved objections to the sufficiency of the evidence only for plain error." *United States v. Zitron*, 810 F.3d 1253, 1260 (11th Cir. 2016) (ellipsis and quotation marks omitted). Here, even though Hinton moved for judgment of acquittal under Rule 29, Fed. R. Crim. P., based on insufficiency of the evidence, he did not make the specific arguments in that motion that he makes on appeal.[2] As a result, we review for plain error. *See id.* (involving the same situation).

Review for "plain error" in a sufficiency challenge can also be stated as review for "a manifest miscarriage of justice." *See United States v. Fries*, 725 F.3d 1286, 1291 n.5 (11th Cir. 2013) ("[W]here a defendant fails to preserve an argument as to the sufficiency of the evidence in the trial court, the predominant rule in this circuit . . . is better stated as requiring that we uphold the conviction

---

[2] Although Hinton makes a few stray references to the argument he made in his motions for judgment of acquittal—that the government proved only a robbery and not a carjacking—we conclude that he has not adequately briefed the issue on appeal and has therefore abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

unless to do so would work a 'manifest miscarriage of justice.'"). Under this standard, we must affirm unless "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Id.* at 1291 (quotation marks omitted).

## III.

Hinton's convictions both rely on an aiding-and-abetting theory of culpability. That view of culpability holds a person "responsible for a crime he has not personally carried out if he helps another to complete its commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014). A person who aids and abets an offense may be punished as if he committed the whole crime personally. *See id.* at 1246–47; 18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.").

"[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at 1245; *see United States v. Sosa*, 777 F.3d 1279, 1292 (11th Cir. 2015). For the "affirmative act" requirement, the defendant's actions need not "advance each element of the offense; all that matters is that they facilitated one component." *Rosemond*, 134 S. Ct. at 1247. For the "intent" requirement, the defendant must "actively

participate[]" in the crime "with full knowledge of the circumstances constituting the charged offense." *Id.* at 1248–49.  A jury may infer a defendant's state of mind from circumstantial evidence.  *United States v. Jernigan*, 341 F.3d 1273, 1279 (11th Cir. 2003); *United States v. Pantoja-Soto*, 739 F.2d 1520, 1524–25 (11th Cir. 1984) (in a sufficiency-of-the-evidence analysis, the elements of aiding and abetting may be proven by either direct or circumstantial evidence).

Here, Hinton claims that the government did not present enough evidence for the jury to find beyond a reasonable doubt that he had the intent necessary to commit carjacking.  "To constitute carjacking under § 2119, the taking of a motor vehicle must be committed with the intent to cause death or serious bodily harm." *United States v. Fulford*, 267 F.3d 1241, 1244 (11th Cir. 2001) (quotation marks omitted).  The intent element is met "where the government 'proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car.'"  *Id.* (quoting *Holloway v. United States*, 526 U.S. 1, 11–12 (1999)).

However, the government did not need to prove that Hinton personally had the intent to seriously harm or kill Allen if necessary to steal the car because, to be convicted under an aiding and abetting theory, he did not personally need to "commit[] all the acts constituting the elements of the substantive crime aided." *Sosa*, 777 F.3d at 1292 (quotation marks omitted).  While the government did need

7

to prove that "someone committed the substantive offense," *see id.*, the trial evidence established that Jones, the wielder of the gun, had the necessary intent. In *Fulford*, we found sufficient evidence of intent to convict of carjacking where the defendant put a gun to the victim's face and ordered him to get out of the car, and the victim testified that he feared for his life. 267 F.3d at 1244. The same basic fact pattern is present here. Jones pointed a gun at Allen and ordered him to get out of the car, and Allen testified that he jumped from the car because he feared for his life. Like the panel in *Fulford*, we conclude that "[t]his evidence is sufficient for a reasonable jury to conclude that [Jones] had the conditional intent to kill or seriously harm [Allen] if necessary to steal the [Marquis]." *See id.*

As for Hinton's culpability, the government presented enough evidence for a jury to find that he was responsible for Jones's conduct. More precisely, there was enough circumstantial evidence for a reasonable jury to infer that Hinton willfully participated in the carjacking "with full knowledge of the circumstances constituting the charged offense." *See Rosemond*, 134 S. Ct. at 1248–49. Hinton orchestrated the initial sale of the Marquis, using an alias and falsely identifying Robinson as his brother. He assured Allen that he had the "title in hand" just before the sale, when a jury could find he knew the title had been pawned previously. He then organized the return of the car, bringing along at least two of the same people involved in the initial sale and initiating the ruse to get Robinson

8

into the driver's seat of the Marquis without giving Allen any money. And he was present in the passenger seat of the Charger when Sears drove it beside the Marquis so that Jones could get out and order Allen from the Marquis at gunpoint. The jury could have reasonably inferred from these facts that Hinton took affirmative acts in furtherance of the carjacking with the intent to aid its commission. *See id.* at 1245.

Hinton also challenges his conviction for aiding and abetting the brandishing of a firearm during the carjacking, which is a "crime of violence" for purposes of 18 U.S.C. § 924(c). *United States v. Moore*, 43 F.3d 568, 572 (11th Cir. 1994); *see also In re Smith*, 829 F.3d 1276, 1280 (11th Cir. 2016). He contends that the evidence was insufficient for the jury to find behind a reasonable doubt that he knew Jones would use a firearm in the commission of the offense.

Where a defendant is charged with aiding and abetting a § 924(c) offense, the government must prove that the defendant had "advance knowledge" that the criminal scheme included a firearm. *Rosemond*, 134 S. Ct. at 1249–50; *id.* at 1249 (stating that an active participant in a criminal scheme "has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun"). "[A]dvance knowledge" means "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 1249–50. Advance knowledge need not be shown directly, however. For instance, "if a defendant

9

continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 1250 n.9.

Here, sufficient evidence supports the jury's finding that Hinton willfully participated in an *armed* carjacking. While no direct evidence exists that Hinton knew Jones had a gun, the government presented sufficient circumstantial evidence from which the jury reasonably could have inferred he knew about the weapon. To begin with, there is simple proximity. Hinton was in the Charger with Jones during the drive to the gas station and then again before the Charger pulled up beside the Marquis and Jones jumped out holding a gun in hand. More broadly, there is the scheme itself. A jury could permissibly infer from the circumstances that Jones's presence with the firearm was not incidental but rather that Jones had an agreed-upon role to play. Sears was driving the Charger. Hinton was the point man who initiated the ruse to get Robinson into the driver's seat of the Marquis. That leaves Jones, who a jury could reasonably conclude was present because he was armed and could use the gun if necessary to effectuate the carjacking.

We find that these facts, taken together, are sufficient for a reasonable jury to conclude beyond a reasonable doubt that Hinton chose to participate in a carjacking knowing it would involve a firearm. At the very least, upholding

Hinton's § 924(c) conviction will not work a "manifest miscarriage of justice." *See Fries*, 725 F.3d at 1291.

For these reasons, Hinton's convictions are **AFFIRMED.**