SEAL *v.* STATE OF INDIANA.

[No. 30,469. Filed April 15, 1965.]

*John A. Carson,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Frederick J. Graf,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by indictment with the crime of Assault and Battery upon one Kenneth B. Alexander. Appellant waived arraignment and entered a plea of not guilty to the charge contained in the indictment. Trial was had to the court without the intervention of a jury, and the court, after hearing evidence, entered its finding that the appellant was guilty of the crime charged in the indictment. The court thereupon rendered judgment sentencing appellant to the Indiana State Farm for a determinate period of six months and in addition thereto he was fined the sum of $100.00 and costs.

Thereafter, the appellant filed his motion for a new trial herein, which motion contained three specifications reading as follows:

"1. The verdict of the Court is not sustained by sufficient evidence.
"2. The verdict of the Court is contrary to law.
"3. The court erred in overruling the defendant's motion for a discharge, and finding for the defendant at the conclusion of the State's case."

Appellant's assignment of error reads as follows:

"1. The Court erred in overruling appellant's motion for a new trial.
"2. For which error appellant prays that the judgment be, in all things, reversed."

While some of the evidence herein is confusing and contradictory as to precisely what happened at the

scene of the crime, it is clearly apparent that on the night of the crime appellant, Seal, in company with Stephen Muller, Thomas Kennedy, John O'Grady and Charles McCahill drove a Plymouth automobile belonging to the father of Stephen Muller to the Columbia Club to crash a Purdue University Extension Dance. None of these young men, who were in their late teens or early twenties, were students at Purdue University Extension nor invitees to the dance. The above mentioned group and one Brody Shiel who joined the group at the Columbia Club became involved in an altercation at the club. Muller, Kennedy and Shiel became involved in a fist-fight at the club and apparently as a result the group was ejected. There was some evidence as to drinking by members of the group before and after entering the club. After leaving the club Muller and one O'Keefe, a newcomer, entered the automobile and slowly drove the same past the Columbia Club and north on Meridian Street to Ohio Street. McCahill had an argument in front of the Columbia Club with a man by the name of Walters and was thereupon joined by O'Grady who came up and hit Mr. Walters. Thereupon the non-riding members left the Circle going north up Meridian Street by ones and twos until they arrived at Ohio Street. It was during this period of travel from the Circle to Ohio Street that Mr. Alexander was injured. There is some conflict in the testimony as to whether the appellant, Aloysius Seal, struck Mr. Alexander with his fist or whether he accidently ran into him while rushing to get to the car. Mr. Seal, the appellant, denied that he hit Mr. Alexander with anything other than his body. He stated that he did not use his fist or hand or foot on Mr. Alexander, either intentionally or purposely. His story of the event was that after leaving the Columbia Club they started running around the Circle on to Meridian

and that at the corner of Meridian Street he saw the car pulling around Ohio Street. He started running as fast as he could and that it was then he had the collision with Mr. Alexander which resulted in Mr. Alexander being thrown to the ground. He stated he turned around after the collision and saw Tom Kennedy who said "[g]o on Al, I'll help the man." He saw the man picked up, but did not go back to personally see whether or not Mr. Alexander was injured, nor did he personally offer any assistance to him.

The evidence most favorable to the State was that adduced from the witness, John C. Turpin, who was a passenger in the bus shortly after midnight on the night in question. The bus approached the intersection of Ohio and Meridian Street and stopped for a stop light. He stated that he was in the first seat on the right hand side of the bus, that the intersection was brilliantly lighted, that he saw from the southeast corner of that intersection a man fall to the sidewalk. He stated that as the bus crossed the intersection he saw three people attacking one person. He identified the man being attacked as Mr. Alexander, and the persons attacking him as Charles McCahill, Al Seal, and John O'Grady. He identified the individuals in open court.

On direct and cross-examination some questions were asked of the witness Turpin and other witnesses who had cast some doubt or question on the identification of the appellant, Seal, as being a participant in this affair. Seal, by his own admission, was in bodily contact with the injured Alexander.

It appears to us that the questions presented in this appeal relate primarily to the weight to be given the evidence adduced at the trial, and the credibility of the witnesses produced at such trial. It has long been the policy of this Court to examine the evidence to determine whether or not it is sufficient

to sustain the verdict of the jury or the finding and judgment of the court, but it is not our province to weigh such evidence. That function is the exclusive duty of the trier of the fact. *Beatty* v. *State* (1963), 244 Ind. 598, 194 N. E. 2d 727; *Beard* v. *State* (1961), 242 Ind. 222, 177 N. E. 2d 589.

The first specification of the appellant's motion for new trial alleges that the finding of the court is not sustained by sufficient evidence. This court considers only the evidence tending to support the findings of the trial court, and on the authority of *Grimes* v. *State* (1963), 244 Ind. 68, 190 N. E. 2d 663; *Peachee* v. *State* (1939), 216 Ind. 42, 44, 22 N. E. 2d 979; and *Schaffer* v. *State* (1930), 202 Ind. 318, 326, we are constrained to hold that the evidence adduced is sufficient to withstand that specification of the motion for new trial.

The second specification of the motion for a new trial was that the verdict of the court is contrary to law. On the authority of *Bowens* v. *State* (1952), 231 Ind. 559, 109 N. E. 2d 91 and *Weaver* v. *State* (1963), 243 Ind. 560, 565, 187 N. E. 2d 485, 488, we are of the opinion that the finding of the court in the case at bar is not contrary to law.

The third and last specification of appellant's motion for new trial was "[t]he court erred in overruling the defendant's motion for a discharge, and finding for the defendant at the conclusion of the State's case." The appellee in its brief alleges that it has made a diligent search of the transcript in this case but cannot locate a motion such as that referred to in the above ground three, and that therefore such ground must be deemed as waived by virtue of Rule 2-17(f).

Without deciding the question of waiver we point out that,

"It is thoroughly settled by the decisions in this state that a peremptory instruction directing a verdict can only be given where there is a total absence of evidence upon some essential issue, or where there is no conflict in the evidence and it is susceptible of but one inference and that inference is favorable to the party asking the instruction. . . . Where a determination of the issue involves the credibility of witnesses, it is an invasion of the province of the jury for the court to direct a verdict. *Haughton* v. *Aetna Life Insurance Co.* (1905), 165 Ind. 32, 73 N.E. 592, 74 N.E. 613." *State* v. *Kubiak* (1936), 210 Ind. 479, 480, 481, 4 N. E. 2d 193; *State* v. *Patsel* (1960), 240 Ind. 240, 245, 163 N. E. 2d 602, 604; *State* v. *Torphy* (1940), 217 Ind. 383, 388, 28 N. E. 2d 70;

It seems reasonable that the same rule would prevail where a trial judge rather than a jury serves as a finder of the facts. *Mann* v. *State* (1933), 205 Ind. 491, 186 N. E. 283.

The record before this court sustains the finding and judgment of the trial court and we find no error of law below.

Certain facts are clearly apparent from the record in this case, and although not crucial to the issues merit discussion. The first being that this group of young men voluntarily engaged upon what is becoming the increasingly prevalent, distasteful and wholly anti-social practice known as "party crashing." Such conduct in and of itself appears to the writer of this opinion to be evidence of a clear and present intention on the part of those so engaged to flout the law. To seek to justify such conduct on the theory that it is merely an excess of exuberant spirits would be somewhat less than realistic. Such conduct has resulted in great property damage and physical injury to individuals as well as creating a public disturbance. It has long been an axiom of Anglo-Saxon law that "a man's home is his castle."

That being true, there, at least, he should be secure from interruption or invasion of privacy by persons not members of his family or invited guests. It seems to the writer of this opinion that such conduct cannot be condoned and persons participating in such activities must be presumed to be aware of the consequences flowing from such acts.

The writer recognizes that the preceding paragraph constitutes dicta, but feels constrained to call attention to an increasingly serious social problem.

The judgment is affirmed.

Arterburn, C. J., Myers and Landis, JJ., concur in result.

Achor, J., not participating.

NOTE.—Reported in 205 N. E. 2d 823.