# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3160

JOSE ERNESTO FLORES,

*Petitioner*,

v.

JOHN ASHCROFT, Attorney General
of the United States,

*Respondent.*

———————

Petition for Review of an Order
of the Board of Immigration Appeals

———————

ARGUED SEPTEMBER 18, 2003—DECIDED NOVEMBER 26, 2003

———————

Before EASTERBROOK, DIANE P. WOOD, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Jose Ernesto Flores was ordered removed under §237(a)(2)(E) of the Immigration and Nationality Act, 8 U.S.C. §1227(a)(2)(E), because he committed a "crime of domestic violence"—which means any offense that is a "crime of violence" under 18 U.S.C. §16 and has a spouse or other domestic partner as a victim. The crime need not be defined in state law as "domestic"; all aspects of the definition are federal. But classification of a state crime under a federal definition can be tricky, and Flores denies that his offense qualifies. We have jurisdiction to determine whether Flores has committed a removable offense, see *Gill v. Ashcroft*, 335 F.3d 574 (7th Cir.

2003); *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir. 1997), but if he has done so then we lack jurisdiction to review any other issues. See 8 U.S.C. §1252(a)(2)(C); *Calcano-Martinez v. INS*, 533 U.S. 348 (2001).

Flores pleaded guilty in Indiana to battery, a misdemeanor, which in that state is any touching in a rude, insolent, or angry manner. Ind. Code §35-42-2-1. He received a one-year sentence because bodily injury ensued. Flores admitted at a removal hearing that the victim was his wife. Although he now contends that he was not given sufficient time before that admission to retain counsel, a removal proceeding is not a criminal prosecution, and the Constitution does not of its own force create a right to legal assistance at every stage. See *Stroe v. INS*, 256 F.3d 498 (7th Cir. 2001). The immigration judge's failure to grant Flores additional continuances before asking questions about the charges may have violated a regulation, but given §1252(a)(2)(C) we lack authority to vindicate regulation-based arguments by criminal aliens. (Violation of a federal regulation differs from violation of the Constitution. See *United States v. Caceres*, 440 U.S. 741 (1979).) By the time the hearing proper arrived, Flores was represented by counsel, as he has been ever since. Lack of legal assistance earlier could matter only to the extent it affected the determination that he committed a crime of domestic battery—and *that* would be possible only if, with the assistance of counsel, Flores might have refused to make one of the concessions at the earlier, uncounseled proceedings: that (a) he is the "Jose Ernesto Flores" who pleaded guilty to the charge, and (b) the victim was his wife. Yet Flores has never (with or without counsel) denied either of these things. The issue at hand is entirely legal: how should the offense created by Ind. Code §35-42-2-1 be classified for purposes of §237(a)(2)(E)? It would be pointless to debate whether, some years ago, the immigration

judge should have afforded Flores more time to hire a lawyer. We move to the main event.

Section 16 says that "The term 'crime of violence' means—(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Because the offense of which Flores was convicted is a misdemeanor, only §16(a) matters. It is limited to crimes that have as an *element* the use of "physical force against the person . . . of another". Indiana law provides: "(a) A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is: (1) a Class A misdemeanor if: (A) it results in bodily injury to any other person". Ind. Code §35-42-2-1. Flores pleaded guilty to this "Class A" version of the misdemeanor offense. The parties treat bodily injury as an "element" because it increases the maximum punishment. There are two other elements: an intentional touching, plus a rude, insolent, or angry manner. Rudeness has nothing to do with force (though it increases the offense given by the touching). But both touching and injury have a logical relation to the "use of physical force" under §16(a).

Flores observes that Indiana does not require much of either touching or injury. Any contact counts as a "touch"—and this includes indirect as well as direct contact, so a snowball, spitball, or paper airplane qualifies if it hits the target. Indiana follows the common-law rule under which any contact, however slight, may constitute battery. *Hamilton v. State*, 237 Ind. 298, 145 N.E.2d 391 (1957); *Seal v. State*, 246 Ind. 353, 5 Ind. Dec. 451, 205 N.E.2d 823 (1965). Touching anything attached to someone else, such as the person's glasses, is treated the same as touching the

body. *Impson v. State*, 721 N.E.2d 1275 (Ind. App. 2000). As for injury: a bruise suffices, as does any physical pain even without trauma. *Lewis v. State*, 438 N.E.2d 289 (Ind. 1982); *Tucker v. State*, 725 N.E.2d 894 (Ind. App. 2000). Indiana's courts reached this conclusion because "serious" bodily injury makes the offense a Class C felony. See Ind. Code §35-42-2-1(a)(3). It follows, Indiana's judiciary concluded, that any physical hurt satisfies §35-42-2-1(a)(1)(A). So if the paper airplane inflicts a paper cut, the snowball causes a yelp of pain, or a squeeze of the arm causes a bruise, the aggressor has committed a Class A misdemeanor (provided that the act was rude, angry, or insolent). It is hard to describe any of this as "violence."

Now Flores did not tickle his wife with a feather during a domestic quarrel, causing her to stumble and bruise her arm. That would not have led to a prosecution, let alone to a year's imprisonment. The police report shows that Flores attacked and beat his wife even though prior violence had led to an order barring him from having any contact with her. The contempt of court reflected in disobedience to this order, plus the ensuing injury, likely explains the prosecution and sentence. The immigration officials ask us to examine what Flores actually did, not just the elements of the crime to which he pleaded guilty. The problem with that approach lies in the language of §16(a), which specifies that the offense of conviction must have "as an element" the use or threatened use of physical force. Section 16 adopts a charge-offense rather than a real-offense approach, as is common to recidivist statutes. See, e.g., *Taylor v. United States*, 495 U.S. 575 (1990). As we explained in *United States v. Howze*, 343 F.3d 919 (7th Cir. 2003), it may be necessary even in charge-offense systems to rely on some aspects of the defendant's actual behavior, in order to know what he has been convicted of: when one state-law offense may be committed in multiple ways, and federal law draws

a distinction, it is necessary to look behind the statutory definition. See also *United States v. Shannon*, 110 F.3d 382, 384-85 (7th Cir. 1997) (en banc). *Howze* was itself an example of this. State law defined, as a single felony, theft from either a living person or an embalmed body. The former is (we held) a crime of violence under 18 U.S.C. §924(e)(2)(B)(ii) and the latter not, because only the former poses a risk of a violent encounter between thief and victim. So in *Howze* we examined the charging papers to learn that the victim had been alive. Indiana's battery statute, by contrast, separates into distinct subsections the different ways to commit the offense. Particularly forceful touchings, or those that cause grave injuries, come under subsections other than Ind. Code §35-42-2-1(a)(1)(A). Thus it is possible to focus on "the elements" of that crime, as §16(a) requires, without encountering any ambiguity, and thus without looking outside the statutory definition. See also *Bazan-Reyes v. United States*, 256 F.3d 600, 606-12 (7th Cir. 2001) (drunk driving is not a crime of violence under the elements approach of §16, even if injury or death ensues).

Although §16(a) directs attention to the statutory elements, §237(a)(2)(E) of the immigration laws departs from that model by making the "domestic" ingredient a real-offense characteristic. Thus it does not matter for purposes of federal law that the crime of battery in Indiana is the same whether the victim is one's wife or a drinking buddy injured in a barroom. The injury to a "domestic partner" is a requirement based entirely on federal law and may be proved without regard to the elements of the state crime. See *Sutherland v. Reno*, 228 F.3d 171, 177-78 (2d Cir. 2000). Substantial evidence, independent of Flores's admission, shows that the victim was his wife. When classifying the state offense of battery for purposes of §16(a), however, the inquiry begins and ends with the elements of the crime.

According to the immigration officials, we should grant *Chevron* deference to the Board's decision that Ind. Code §35-42-2-1(a)(1)(A) satisfies the federal definition. An earlier decision reached this conclusion, after extended analysis, with respect to a Connecticut law similar to Ind. Code §35-42-2-1(a)(1)(A), see *Matter of Martin*, 23 I.&N. Dec. 491 (B.I.A. 2002), and in Flores's case the Board relied on *Martin*. Yet *Chevron* deference depends on delegation, see *United States v. Mead Corp.*, 533 U.S. 218 (2001), and §16(a) does not delegate any power to the immigration bureaucracy (formerly the Immigration and Naturalization Service, now the Bureau of Citizenship and Immigration Services), or to the Board of Immigration Appeals. Section 16 is a criminal statute, and just as courts do not defer to the Attorney General or United States Attorney when §16 must be interpreted in a criminal prosecution, so there is no reason for deference when the same statute must be construed in a removal proceeding. Any delegation of interpretive authority runs to the Judicial Branch rather than the Executive Branch. Cf. *Adams Fruit Co. v. Barrett*, 494 U.S. 638 (1990). One law has one meaning, and a given state conviction a single classification, whether the subject arises in removal or in a recidivist prosecution in federal court. Although the agency's interpretation in *Martin* may have persuasive force, and we must give it careful consideration, it has no binding effect along *Chevron*'s lines.

*Martin* is not persuasive. Besides starting with legislative history rather than the text of §16—the Board saw great significance in a footnote to the Senate Report, though this footnote did not purport to disambiguate any statutory language and thus lacks weight on the Supreme Court's view of legislative history's significance—the Board made two logical errors. It relied on decisions such as *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001); *United States v. Ceron-Sanchez*, 222 F.3d 1169 (9th Cir. 2000); and *United*

*States v. Smith*, 171 F.3d 617 (8th Cir. 1999), which hold that state laws penalizing battery with intent to injure are crimes of violence under §16 (or similar statutes, such as §924(e)(2)). The Board concluded that this approach is equally applicable to laws such as Ind. Code §35-42-2-1(a)(1)(A). The first error is equating *intent* to cause injury (an element of the state laws at issue in those decisions) with any injury that happens to occur. It may well be that acts designed to injure deserve the appellation "violent" because the intent makes an actual injury more likely; it does not follow that accidental hurts should be treated the same way. Indiana's battery law does not make intent to injure an element of the offense; intent to *touch* must be established, but not intent to injure. The Board's second error was failure to appreciate the difference between felony and misdemeanor convictions. When the prior offense is a felony, then any criminal conduct that involves a "substantial risk" of physical force may be classified as a crime of violence under §16(b) or §924(e)(2)(B)(ii). (*Howze* involved a prior felony, which is why we looked to the risk of an altercation breaking out between thief and victim.) But when the conviction is for a misdemeanor, then physical force must be an element under §16(a) or §924(e)(2) (B)(i).

Section 16(a) refers to the "use of physical force". Every battery entails a touch, and it is impossible to touch someone without applying *some* force, if only a smidgeon. Does it follow that every battery comes within §16(a)? No, it does not. Every battery involves "force" in the sense of physics or engineering, where "force" means the acceleration of mass. A dyne is the amount of force needed to accelerate one gram of mass by one centimeter per second per second. That's a tiny amount; a paper airplane conveys more. (A newton, the amount of force needed to accelerate a kilogram by one meter per second per second, is 100,000 dynes, and a good punch packs a passel of newtons.) Perhaps one *could* read

the word "force" in §16(a) to mean one dyne or more, but that would make hash of the effort to distinguish ordinary crimes from violent ones. How is it possible to commit *any* offense without applying a dyne of force? Section 16(a) speaks of "physical force against the person *or property* of another" (emphasis added). Cashing a check obtained by embezzlement requires lots of dynes to move the check into an envelope for mailing. Suppose someone finds a set of keys that the owner dropped next to his car and, instead of taking them to a lost and found, turns the key in the lock and drives away. One would suppose that to be a paradigm non-violent offense, yet turning the key in the lock requires "physical force" (oodles of dynes) directed against the property (the auto) of another.

To avoid collapsing the distinction between violent and non-violent offenses, we must treat the word "force" as having a meaning in the legal community that differs from its meaning in the physics community. The way to do this is to insist that the force be violent in nature—the sort that is intended to cause bodily injury, or at a minimum likely to do so. We have already drawn just that line. See *Solorzano-Patlan v. INS*, 207 F.3d 869, 875 n.10 (7th Cir. 2000); *Xiong v. INS*, 173 F.3d 601, 604-05 (7th Cir. 1999). Otherwise "physical force against" and "physical contact with" would end up meaning the same thing, even though these senses are distinct in law. This is not a quantitative line ("how many newtons makes a touching violent?") but a qualitative one. An offensive touching is on the "contact" side of this line, a punch on the "force" side; and even though we know that Flores's *acts* were on the "force" side of this legal line, the elements of his *offense* are on the "contact" side. Because §16(a) tells us that the elements rather than the real activities are dispositive in misdemeanor cases, this conviction cannot properly be classified as a crime of violence, and the basis for Flores's removal has been knocked out—along with any obstacle to our jurisdiction.

The order of removal is vacated, and the matter is remanded to the Board.

EVANS, *Circuit Judge*, concurring. Although it's debatable whether expending dynes (to say nothing about newtons) pressing the keys of my wordprocessor to concur in this case is worth the effort, I do so because the result we reach, though correct on the law, is divorced from common sense. For one thing, people don't get charged criminally for expending a newton of force against victims. Flores actually beat his wife—after violating a restraining order based on at least one prior beating—and got a one-year prison sentence for doing so.

If it is permissible to look to Flores' "real conduct" to determine if the person he beat was his wife rather than some stranger, why does it not make perfectly good sense to allow an immigration judge to look at what he really did in other respects as well, rather than restrict the judge to a cramped glance at the "elements" of a cold statute? The more information upon which the judge acts, the better. A common-sense review here should lead one to conclude that Flores committed a "crime of domestic violence." Simply put, by any commonly understood meaning of that term, that's exactly what he did, and that should be the end of the story. We, and the IJ as well in this case, should be able to look at what really happened.

We recently observed that critics of our system of law often see it as "not tethered very closely to common sense." *United States v. Cranley* (2003 WL 22718171, decided November 19, 2003). This case is a good example of why

that observation hits the nail on the head. Nevertheless, Judge Easterbrook is correct in applying the law so I join his persuasive (as usual) and colorful—snowballs, spitballs, and paper airplanes et al.—opinion. However, I do not applaud the result we reach. And one final point: Whether doing what Flores *actually* did *should* cause him to be removed from the country is a question we are without jurisdiction to answer. For better or worse, that's a matter for the executive branch as it attempts to implement the will of Congress.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
